**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BANKERS LIFE AND CASUALTY COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **NO.** |
| **SHANNON NELSON, KELLY DACHTLER, RYAN KASHMERICK, TIMOTHY HORVATH, DAVID TEESDALE, TROY BAXTER, LISA BENSON, JOHN BLANCK, BERT BROTHERTON, JOSHUA CLARK, KIRK JOHNSTON, JOHN KIME, SETH KISHEFSKY, JOSEPH MICHALEC, MICHAEL ROBERTSON, KURTIS TULPPO, and JONATHAN YOUNG,** | |
| **Defendants.** | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Bankers Life and Casualty Company ("Bankers Life" or "Plaintiff") files this Verified Complaint against Shannon Nelson, Kelly Dachtler, Ryan Kashmerick, Timothy Horvath and David Teesdale (collectively, the "Manager Defendants"), and Troy Baxter, Lisa Benson, John Blanck, Bert Brotherton, Joshua Clark, Kirk Johnston, John Kime, Seth Kishefsky, Joseph Michalec, Michael Robertson, Kurtis Tulppo and Jonathan Young (collectively, the "Agent Defendants") (collectively "Defendants").

## I.    NATURE OF THE ACTION

1.    This action arises out of Defendants' improper downloading of confidential policyholder information, breach of their respective Agent Contracts and other dishonest and actionable conduct. The five Manager Defendants are the former Branch Sales Manager, Unit

Sales Managers and Unit Field Trainers of Bankers Life's Traverse City, Michigan branch office, and the twelve Agent Defendants are former agents for Bankers Life, all of whom signed Agent Contracts containing important confidentiality, anti-raiding and customer non-solicitation provisions. Defendants have breached these important provisions.

Specifically, in anticipation of the negative consequences of investigations conducted by Bankers Life's Human Resources department and Special Investigations Unit, several of the Defendants, foreseeing their impending termination and/or termination of their contracts, obtained licenses to sell insurance for North American Company for Life & Health Insurance ("North American"), a competitor of Bankers Life. These Defendants then resigned from and/or voluntarily terminated their contracts with Bankers Life and solicited the other Defendants to terminate their contracts with Bankers Life and join North American.

After becoming licensed by North American and just prior to their departure from Bankers Life, Defendants improperly downloaded and utilized Bankers Life's confidential and trade secret information, including client list reports and prospecting resources, the very information needed to target particular policyholders and tailor proposals to them. In doing so, Defendants violated not only Bankers Life's rights, but the privacy rights of those policyholders.

Moreover, Defendants Young, Tulppo, Teesdale and Michalec have contacted Bankers Life policyholders for the purpose of inducing such policyholders to cancel their Bankers Life policies and purchase new policies from North American. Defendants' conduct has forced Bankers Life to seek judicial relief.

## II.   PARTIES

2.     Bankers Life is incorporated in Illinois, and its principal place of business is in Illinois. Bankers Life has branch offices throughout the United States, including one located at 1501 Cass St., Traverse City, MI, 49684.

3.     Shannon Nelson is a citizen of Michigan and, upon information and belief, currently resides at 10229 Council Oak Drive, Traverse City, MI 49686.

4.     Kelly Dachtler is a citizen of Michigan and, upon information and belief, currently resides at 4600 Kory Lane, Traverse City, MI 49685.

5.     Ryan Kashmerick is a citizen of Michigan and, upon information and belief, currently resides at 1207 Willow Street, Traverse City, MI 49684.

6.     Timothy Horvath is a citizen of Michigan and, upon information and belief, currently resides at 4677 State Park Hwy., Interlochen, MI 49643.

7.     David Teesdale is a citizen of Michigan and, upon information and belief, currently resides at 808 Westminster Road, Traverse City, MI 49686.

8.     Troy Baxter is a citizen of Michigan and, upon information and belief, currently resides at 426 W. Washington Ave., Alpena, MI 49707.

9.     Lisa Benson is a citizen of Michigan and, upon information and belief, currently resides at 1782 Suisse Lane, Gaylord, MI 49735.

10.     John Blanck is a citizen of Michigan and, upon information and belief, currently resides at 5250 Lacount Road, Harbor Springs, MI 49740.

11.     Bert Brotherton is a citizen of Michigan and, upon information and belief, currently resides at 4840 N. 29 Road, Manton, MI 49663.

12.      Joshua Clark is a citizen of Michigan and, upon information and belief, currently resides at 842 Pine Grove Avenue, Traverse City, MI 49686.

13.     Kirk Johnston is a citizen of Michigan and, upon information and belief, currently resides at 10745 Lewis Road, Vanderbilt, MI 49795.

14.      John Kime is a citizen of Michigan and, upon information and belief, currently resides at 2032 Hawthorne Road, Grosse Pointe, MI 48236.

15.     Seth Kishefsky is a citizen of Michigan and, upon information and belief, currently resides at 1900 Apartment Drive Apt. 2, Traverse City, MI 49696.

16.     Joseph Michalec is a citizen of Michigan and, upon information and belief, currently resides at 3811 Hammond Road E, Traverse City, MI 49686.

17.     Michael Robertson is a citizen of Michigan and, upon information and belief, currently resides at 206 W. Dresden St., Kalkaska, MI 49646.

18.     Kurtis Tulppo is a citizen of Michigan and, upon information and belief, currently resides at 2245 Jonathan Lane, Kingsley, MI 49649.

19.     Jonathan Young is a citizen of Michigan and, upon information and belief, currently resides at 3216 Holiday Village Road, Traverse City, MI 49686.

## III.     JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1332.

21.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Bankers Life seeks recovery, in addition to other causes of action, for Defendants' violation of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and their misappropriation of protected health information ("PHI") as regulated by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. § 164.501, *et seq.*

22.     In addition, this action is between citizens of different states and Bankers Life seeks injunctive relief and recovery of damages, which together satisfy the amount in controversy threshold under 28 U.S.C. § 1332.

23.     Defendants are subject to personal jurisdiction and venue in Illinois as a result of their respective Agent Contracts, which state, "Venue for any action between the parties arising under this Contract shall be in a court located in Chicago, Cook County, Illinois." (Agent

Contract, ¶ 25).

24.     Defendants signed their Agent Contracts at various times between 2006 and 2011. A true and accurate copy of Defendant Nelson's Agent Contract and signed declaration page are attached as Exhibit A. A true and accurate copy of Defendant Dachtler's Agent Contract and signed declaration page are attached as Exhibit B. A true and correct copy of Defendant Kashmerick's Agent Contract and signed declaration page are attached as Exhibit C. A true and correct copy of Defendant Horvath's Agent Contract and signed declaration page are attached as Exhibit D. A true and correct copy of Defendant Teesdale's Agent Contract and signed declaration page are attached as Exhibit E. A true and accurate copy of Defendant Baxter's Agent Contract and signed declaration page is attached as Exhibit F. A true and accurate copy of Defendant Benson's Agent Contract and signed declaration page is attached as Exhibit G. A true and accurate copy of Defendant Blanck's Agent Contract and signed declaration page is attached as Exhibit H. A true and accurate copy of Defendant Brotherton's Agent Contract and signed declaration page is attached as Exhibit I. A true and accurate copy of Defendant Clark's Agent Contract and signed declaration page is attached as Exhibit J. A true and accurate copy of Defendant Johnston's Agent Contract and signed declaration page is attached as Exhibit K. A true and accurate copy of Defendant Kime's Agent Contract and signed declaration page is attached as Exhibit L. A true and accurate copy of Defendant Kishefsky's Agent Contract and signed declaration page is attached as Exhibit M. A true and accurate copy of Defendant Michalec's Agent Contract and signed declaration page is attached as Exhibit N. A true and accurate copy of Defendant Robertson's Agent Contract and signed declaration page is attached as Exhibit O. A true and accurate copy of Defendant Tulppo's Agent Contract and signed declaration page is attached as Exhibit P. A true and accurate copy of Defendant Young's Agent Contract and signed declaration page is attached as Exhibit Q. All are incorporated herein by

reference.

## IV.   GENERAL ALLEGATIONS

### A.   Bankers Life's Business and Agent Contracts

25.    Bankers Life is engaged in the business of providing seniors with various insurance and financial products, such as long term care insurance, life annuities, and Medicare Supplement insurance.

26.    The management of Bankers Life's field offices consists of a Branch Sales Manager, Unit Sales Manager(s) and Unit Field Trainer(s). The Branch Sales Manager reports directly to the Territory Vice President and is responsible for directing the overall operations and activities of the branch sales office. The Unit Sales Manager reports to the Branch Sales Manager and is responsible for functions such as achieving sales goals and the recruitment and development of agents. The Unit Field Trainer reports to the Branch Sales Manager and/or Unit Sales Manager and is responsible for recruiting, training and mentoring agents, as well as maintaining personal production levels.

27.    Bankers Life hired Defendant Nelson as the Branch Sales Manager of the Traverse City office in 1994. Bankers Life hired Defendant Dachtler and Defendant Kashmerick as Unit Sales Managers for the Traverse City office in 2005 and 2004, respectively. Bankers Life hired Defendant Horvath and Defendant Teesdale as Agent Field Trainers for the Traverse City office in 2008 and 2009, respectively. The Agent Field Trainer position became the Unit Field Trainer position in 2010. The Manager Defendants had previously signed Agent Contracts, which remained in effect during their tenure as Managers. *See* Exhibits A-E.

28.    In furtherance of its business, Bankers Life utilizes agents (*i.e.*, independent contractors) to provide insurance and financial products to its customers. By meeting face-to-face with customers, learning detailed information about them, and addressing their insurance

6

needs, agents develop, maintain, and advance the relationships between Bankers Life and its customers. It takes years to develop these customer relationships, which are characterized by low turnover and long-term stability, consistent with the nature of the products at issue – long-term care insurance and life annuities. Approximately 90% of Bankers Life's policyholders renew their policies in a given year with Bankers Life, and the business relationship between Bankers Life and its policyholders, on average, lasts approximately nine years. As such, Bankers Life invests substantial time and resources in obtaining and developing these customer relationships. The Defendants would not have had these customer relationships, nor obtained such detailed private information about these customers, but for their association with Bankers Life.

29.     Bankers Life appointed the Agent Defendants as agents in Bankers Life's Traverse City, Michigan office and, in return, required that they sign Agent Contracts. The Agent Defendants signed their respective Agent Contracts. *See* Exhibits F-Q.

30.     The Agent Contracts contain the same important confidentiality, anti-raiding, and customer non-solicitation provisions.

31.     With respect to confidentiality, Paragraphs 6(c) & (d) and 15 of the Agent Contracts state, in pertinent part, as follows:

> 6(c). The Agent agrees that any and all "Nonpublic Personal Information" obtained by the Agent on behalf of or from Bankers Life and Casualty . . . shall be used by [him/her] only as necessary to fulfill [his/her] obligations under this Contract . . .

> "Nonpublic Personal Information" . . . includes but is not limited to name, address, and financial or health information of a policyholder, insured, applicant, or prospect.

> This subsection survives the termination of the Agent Contract.

> (d). The Agent agrees to the provisions, terms, responsibilities and duties as set forth in Addendum "A" of this Contract entitled "Business Associate Agreement" that pertains to the privacy and

protection of Protected Health Information (PHI) as regulated under the Privacy Rules of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

This subsection also survives the termination of the Agent Contract.

15. The Company will supply rate information, sales manuals and forms for the solicitation of applications for insurance. The Agent acknowledges that all names, policyholder cards and contact data furnished by the Company is specialized and confidential information not generally known in the industry. The Agent further acknowledges that the identity and insurance needs of the Company's clients are not generally known in the industry and that the Company has a proprietary interest in the identity of the Company's customers and customer list. Agent agrees to hold all names, policyholder cards, contact data and customer list in a fiduciary capacity and agrees not to divulge the names, policyholder cards or other contact data to any other Company, agency or person. The Agent agrees to return all rate information, sales manuals, forms, policyholder cards, contact data, and customer lists to the Company upon demand or upon termination as provided in paragraph 22 thereof [which states that "[u]pon termination of this contract, the Agent will promptly return to the Company any and all literature, forms, manuals, supplies, lists, contact data, policyholder lists and other written or printed information in any way pertaining to the business of the Company."]

In the event of breach or threatened breach of this section, the Agent agrees that the Company shall be entitled to seek all appropriate remedies, including without limitation, injunctive relief and monetary damages.

32.     The Agent Contracts also contain the following anti-raiding and customer non-

solicitation provisions in Paragraph 24:

During the term of this Contract and for 24 months thereafter, within the territory regularly serviced by the branch sales office of the Company where the Agent normally submits business, the Agent shall not, personally or through the efforts of others, induce or attempt to induce:

(a) any agent, Branch Sales Manager, Territory Vice President, employee, consultant or other similar representative of the Company to curtail, resign or sever a relationship with the Company.

(b) any agent, Branch Sales Manager, Territory Vice President or employee of the Company to contract with or sell insurance business with any company not affiliated with the Company, or

(c) any policyholder of the Company to relinquish, surrender, replace, or lapse any policy issued by the Company.

In the event of breach or threatened breach of any of these covenants, the Agent agrees that the Company shall be entitled to seek all appropriate remedies, including without limitations, injunctive relief and monetary damages.

33.     For the Defendants, the restricted territory (as set forth in paragraph 24 of their respective Agent Contracts) is comprised of the following counties in northern Michigan: Alcona, Alpena, Antrim, Benzie, Charlevoix, Cheboygan, Chippewa, Clare, Crawford, Emmet, Gladwin, Grand Traverse, Iosco, Kalkaska, Lake, Leelanau, Mackinac, Manistee, Missaukee, Montmorency, Ogemaw, Osceola, Oscoda, Ostego, Presque Isle, Roscommon and Wexford.

34.     Further, the Agent Contracts require that the "Agent's conduct shall be fair, honest, lawful and courteous, and shall not adversely affect the business, goodwill, or reputation of the company." (Agent Contract, ¶ 17).

35.     With their Agent Contracts in place, Bankers Life gave the Defendants access to the very confidential and trade secret information described in their Agent Contracts – namely, confidential rate information, sales manuals, customer lists, policyholder cards, and contact data. By having access to the policyholder cards and policyholder contact data, in particular, the Defendants became privy to confidential and trade secret policyholder information including, without limitation, the policyholders' names, addresses, contact information, dates of birth, social security numbers, the policies each policyholder has with Bankers Life, the coverage provided by those policies, and the premiums paid by the policyholders.

36.     While performing services for Bankers Life, the Defendants utilized all of the

confidential and trade secret information described above in identifying Bankers Life's current and prospective customers, interfacing with them, and selling them various insurance and financial products. Indeed, the Defendants could not have performed any of this work on behalf of Bankers Life without such information, and the Defendants would not have learned or otherwise had access to such information but for their employment as Bankers Life managers and appointment as Bankers Life agents.

37.     By signing their respective Agent Contracts, the Defendants acknowledged the confidential and trade secret nature of the information described above and agreed not to misappropriate such information in any way. *See* Paragraphs 6 and 15 of the Agent Contract. In addition to requiring all managers and agents to sign contracts (containing confidentiality provisions), Bankers Life took and still takes additional measures to guard against the unauthorized disclosure of its confidential and trade secret information. For instance, all policyholder cards, policyholder contact information, and the like are stored in password-protected computer databases.

38.     In spite of the confidentiality, anti-raiding, and customer non-solicitation provisions contained in their respective contracts, each and every one of the Defendants has breached one or more of these provisions as set forth below.

**B.      The Investigations of the Traverse City Branch Office**

39.     After receiving several complaints regarding the activities of both former and current agents and managers, members of Bankers Life's Human Resources department and Special Investigations Unit conducted on-site investigations of the Traverse City branch office in early February and mid-March, 2011.

40.     These investigations revealed numerous instances of fraud and other improper conduct by several Defendants.

10

41.     For example, Defendant Horvath (after misleading Bankers Life's investigators during his initial interview) admitted to forging the signature of a policyholder on her policy delivery receipt.

42.     Similarly, Defendant Young (after misleading Bankers Life's investigators during his initial interview) admitted to forging the signatures of several of his family members on policy applications.  Young took out the policies solely for the purpose of qualifying for a sales bonus, and then cancelled the policies shortly thereafter.

43.     Finally, Defendants Nelson, Dachtler and Kashmerick admitted during their interviews that they improperly instructed agents to refrain from placing sales leads on the "do not call" list unless the individuals had requested that they not be called at least seven (7) times. Agents that did not follow this instruction were subject to retaliation by Nelson, Dachtler and Kashmerick.

44.     The Special Investigations Unit concluded its on-site investigation and provided its findings to Bankers Life's Human Resources and Legal departments, which began to prepare their recommendations for appropriate discipline, up to and including termination for certain Manager Defendants  and termination of agreements for certain Agent Defendants.

45.     Anticipating their likely termination of employment and/or termination of their agreements, Defendants Nelson, Dachtler, Kashmerick, Horvath and Young obtained licenses to sell insurance products for North American.  These Defendants then solicited the remaining Defendants to also obtain licenses with North American and prepare to terminate their agreements with Bankers Life.

**C.     Defendants' Downloading Activity**

46.     Shortly before resigning and/or voluntarily terminating their agreements, each Defendant accessed Bankers Life's Sales Productivity Network and/or Bankers Life's

Centralized Marketing Database and downloaded various policyholder list reports. Downloading these reports enabled Defendants to view and print contact information and other details regarding all of the policyholders whom they serviced.

47.     Defendant Nelson accessed Bankers Life's Centralized Marketing Database in late February, after he was aware of the pending investigation into his branch office, and downloaded multiple prospect and customer lists.

48.     Defendant Dachtler became appointed with North American on March 13, 2011 and submitted her resignation from Bankers Life on March 26, 2011. During the interim time period, Dachtler downloaded policyholder records on March 14, 15, 16, 19, 22, 23, 24, and 26. Dachtler also downloaded a policyholder list containing *hundreds* of records on March 27, the day *after* she submitted her resignation.

49.     Defendant Kashmerick became appointed with North American on March 9, 2011 and submitted his resignation from Bankers Life on March 20, 2011. During the interim time period, Kashmerick downloaded a significant number of policyholder records on March 9, 10, 14 and 15.

50.     Defendant Horvath became appointed with North American on March 10, 2011 and submitted his resignation from Bankers Life on March 18, 2011. Horvath downloaded over *one thousand* policyholder records on March 17, the day before he submitted his resignation.

51.     Defendant Teesdale became appointed with North American on March 15, 2011 and submitted his resignation from Bankers Life on March 23, 2011. Teesdale downloaded hundreds of policyholder records the very day of his resignation, and downloaded several policyholder records the day *after* he resigned.

52.     Defendant Baxter became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 25, 2011. During the interim time period,

Baxter downloaded a significant number of policyholder records on March 14, 15, 16, 17, 18, 21 and 23.

53.     Defendant Benson became appointed with North American on March 16, 2011 and terminated her agreement with Bankers Life on April 5, 2011. During the interim time period, Benson downloaded a significant number of policyholder records on March 16, 21, 22, 23, 28, and 29.

54.     Defendant Blanck became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 30, 2011. During the interim time period, Blanck downloaded a significant number of policyholder records, including downloading over 900 policyholder records on March 25.

55.     Defendant Brotherton became appointed with North American on March 20, 2011 and terminated his agreement with Bankers Life on March 25, 2011. Brotherton downloaded policyholder records on March 23, only two days before he terminated his agreement.

56.     Defendant Clark became appointed with North American on March 20, 2011 and terminated his agreement with Bankers Life on March 22, 2011. On the very day that he terminated his agreement, Clark downloaded a significant number of policyholder records.

57.     Defendant Johnston became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 25, 2011. During the interim time period, Johnston downloaded a significant number of policyholder records, including downloads on the day before and the very day he terminated his agreement.

58.     Defendant Kime became appointed with North American on March 15, 2011 and terminated his agreement with Bankers Life on March 28, 2011. During the interim time period, Kime downloaded a significant number of policyholder records on March 16, 19, 21, 23 and the very day he terminated his agreement, March 28.

59. Defendant Kishefsky became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 24, 2011. During the interim time period, Kishefsky downloaded a significant number of policyholder records, including downloading hundreds of records on March 22 and records on the very day he terminated his agreement.

60. Defendant Michalec became appointed with North American on March 16, 2011 and terminated his agreement with Bankers Life on March 28, 2011. During the interim time period, Michalec downloaded policyholder records, including downloading records on the very day he terminated his agreement.

61. Defendant Robertson became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 28, 2011. During the interim time period, Robertson downloaded a significant number of policyholder records on March 14, 16, 17, 18, 21, 24 and 26.

62. Defendant Tulppo became appointed with North American on March 13, 2011 and terminated his agreement with Bankers Life on March 24, 2011. During the interim time period, Tulppo downloaded a significant number of policyholder records, including downloading over 150 records on March 21.

63. Defendant Young became appointed with North American on March 9, 2011 and terminated his agreement with Bankers Life on March 26, 2011. During the interim time period, Young downloaded a significant number of policyholder records, including downloading hundreds of policyholder records on March 20.

64. Defendants knew that they were resigning from and/or terminating their agreements with Bankers Life and had no legitimate reason to download these records. Rather, Defendants removed this policyholder information from Bankers Life's database and office with

14

the intent to use this information in their new positions with North American.

65.     The downloaded information includes private and confidential policyholder information, including PHI.

66.     In addition to these improper downloads, Defendants have failed to return Bankers Life's other confidential information upon the termination of their Agent Contracts.

**D.     Replacement Activity**

*Defendant Young*

67.     Defendant Young signed his Agent Contract with Bankers Life on May 31, 2007.

68.     On March 21, 2011, Young terminated his Agent Contract.

69.     Since terminating his relationship with Bankers Life, Young has contacted Bankers Life policyholders for the purpose of having them cancel, relinquish, surrender, replace, or lapse their policies issued by Bankers Life.  Specifically, Young has sent letters to Bankers Life policyholders Ed Parsons and Mary Weeber that informs them of Young's departure from Bankers Life and solicits them to contact and continue their relationship with Young.  Upon information and belief, Young has sent this letter to additional Bankers Life policyholders as well.

*Defendant Tulppo*

70.     Defendant Tulppo signed his Agent Contract with Bankers Life on July 2, 2009.

71.     On March 25, 2011, Tulppo terminated his Agent Contract.

72.     Since terminating his relationship with Bankers Life, Tulppo has contacted Bankers Life policyholders for the purpose of having them cancel, relinquish, surrender, replace, or lapse their policies issued by Bankers Life.  Specifically, Tulppo contacted Bankers Life policyholder Linda Kiter by telephone, telling her that he left Bankers Life because of "bad business" but that he could help Ms. Kiter with any questions that she may have, and that he

could get her a "better deal" with another company.

> *Defendant Teesdale*

73.     Defendant Teesdale signed his Agent Contract with Bankers Life on October 16, 2009.

74.     On March 31, 2011, Teesdale terminated his Agent Contract.

75.     Since terminating his relationship with Bankers Life, Teesdale has contacted Bankers Life policyholders for the purpose of having them cancel, relinquish, surrender, replace, or lapse their policies issued by Bankers Life. Specifically, Teesdale contacted Bankers Life policyholder Mary Sullivan and solicited her to cancel her Bankers Life policy and take out a policy with North American.

> *Defendant Michalec*

76.     Defendant Michalec signed his Agent Contract with Bankers Life on January 4, 2011.

77.     On March 28, 2011, Michalec terminated his Agent Contract.

78.     Since terminating his relationship with Bankers Life, Michalec has contacted Bankers Life policyholders and prospective policyholders for the purpose of having them cancel, relinquish, surrender, replace, or lapse their policies issued by Bankers Life. Specifically, Michalec contacted prospective Bankers Life policyholder Colleen Smith and solicited her to cancel her insurance applications with Bankers Life and take out policies with a competitor. As a result, Ms. Smith has cancelled her applications with Bankers Life.

## V.     SPECIFIC CLAIMS

### FIRST CLAIM FOR RELIEF
**(Fraud and Related Activity in Connection With Computers- 18 U.S.C. § 1030)**
(Against All Defendants)

79.     Paragraphs 1 through 78 of this Verified Complaint are fully incorporated herein

by reference.

80.     Bankers Life is a "person" for purposes of 18 U.S.C. § 1030(e)(12).

81.     The Bankers Life computers from which the Defendants downloaded the records of hundreds of policyholders is a "protected computer" as it is an electrical high speed data processing device that performed storage functions, and it is used in interstate commerce or communications. 18 U.S.C. § 1030(e)(1)-(2).

82.     By engaging in the conduct described herein, the Defendants intentionally accessed a computer while exceeding their authorized access, and obtained information from a protected computer, in violation of 18 U.S.C. § 1030(a)(2)(C).

83.     As a result of the Defendants engaging in the conduct described herein, Bankers Life has suffered monetary losses as well as irreparable harm requiring preliminary and permanent injunctive relief.

84.     As a result of the Defendants' violation of the CFAA, Bankers Life is entitled to compensatory damages and injunctive relief pursuant to 18 U.S.C. § 1030(g).

## SECOND CLAIM FOR RELIEF
### (Breach of Contract /Breach of the Confidentiality Provisions)
(Against All Defendants)

85.     Paragraphs 1 through 84 of this Verified Complaint are fully incorporated herein by reference.

86.     Bankers Life entered into a valid and enforceable Agent Contracts with each and every one of the Defendants.

87.     Bankers Life offered the terms of the Agent Contract to each Defendant, and each Defendant accepted such terms.

88.     Each and every one of the Defendants received consideration for signing and entering into the Agent Contract.

17

89.     In their respective Agent Contracts, Defendants specifically warranted and agreed that they would not disclose to any person or use for their own purposes any of Bankers Life's confidential and trade secret information, including, without limitation, PHI, Bankers Life's policyholder cards and policyholders' contact data.   In their respective Agent Contracts, Defendants also warranted and agreed that they would return all of Bankers Life's documents and other property.

90.     Defendants have breached their respective Agent Contracts.

91.     Without any authorization from Bankers Life, Defendants have improperly downloaded, used and/or disclosed Bankers Life's confidential and trade secret information.

92.     Bankers Life has performed each and every obligation required of it under the Agent Contract for each Defendant.

93.     Bankers Life has suffered actual damages as a result of Defendants' breach of the confidentiality provisions of their respective Agent Contracts.

94.     Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of Defendants' breach of their non-disclosure obligations until such time as they are ordered to cease using Bankers Life's confidential, trade secret, and proprietary information.

95.     Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for Defendants' breach of their non-disclosure obligations.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract/Breach of the Anti-Raiding Provision)**
(Against the Manager Defendants and Defendants Johnston and Young)

96.     Paragraphs 1 through 95 of the Verified Complaint are fully incorporated herein by reference.

97.     In consideration of becoming Bankers Life managers and/or agents, the Manager Defendants and Defendants Johnston and Young specifically agreed in their respective Agent

Contracts that they would not personally or through the efforts of others induce or attempt to induce any Bankers Life agent or employee to sever their relationship with Bankers Life or to sell insurance with a different company.

98.     This anti-raiding provision of the Agent Contracts is reasonably necessary to protect legitimate business interests of Bankers Life, namely its agents, near-permanent customer relationships and Bankers Life's confidential and trade secret information.

99.     The anti-raiding provision is reasonable as to scope in time and territory.

100.     The Manager Defendants and Defendants Johnston and Young have breached and are continuing to breach the anti-raiding provision contained in their respective Agent Contracts. The Manager Defendants and Defendants Johnston and Young have solicited Bankers Life agents to terminate their agreements with Bankers Life and become appointed with North American.

101.     Bankers Life has suffered actual damages as a result of the Manager Defendants and Defendants Johnston and Young's breach of the anti-raiding provision of their Agent Contracts.

102.     Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of the Manager Defendants and Defendants Johnston and Young's breach of their anti-raiding obligations until such time as they are ordered to cease soliciting Bankers Life's agents.

103.     Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for the Manager Defendants and Defendants Johnston and Young's breach of their anti-raiding obligations.

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract /Breach of the Customer Non-Solicitation Provisions)**
(Against Defendants Young, Tulppo, Teesdale and Michalec)

104.     Paragraphs 1 through 103 of this Verified Complaint are fully incorporated herein

by reference.

105. In consideration of becoming Bankers Life managers and/or agents, Defendants Young, Tulppo, Teesdale and Michalec specifically agreed in their respective Agent Contracts that they would not personally or through the efforts of others induce or attempt to induce any Bankers Life policyholder to relinquish, surrender, replace, or lapse any policy issued by Bankers Life.

106. This customer non-solicitation provision as contained in the Agent Contracts is reasonably necessary to protect legitimate business interests of Bankers Life, namely its agents, near-permanent customer relationships and Bankers Life's confidential and trade secret information.

107. The customer non-solicitation provision is reasonable as to scope in time and territory.

108. Defendants Young, Tulppo, Teesdale and Michalec have breached and are continuing to breach the customer non-solicitation provision contained in their respective Agent Contracts. Defendants Young, Tulppo, Teesdale and Michalec have solicited Bankers Life policyholders to relinquish, surrender, replace, or lapse policies issued by Bankers Life.

109. Bankers Life has suffered actual damages as a result of Defendants Young, Tulppo, Teesdale and Michalec's breach of the customer non-solicitation provision of their Agent Contracts.

110. Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of Defendants Young, Tulppo, Teesdale and Michalec's breach of their customer non-solicitation obligations until such time as they are ordered to cease soliciting Bankers Life policyholders.

111. Injunctive relief is necessary as the recovery of money damages alone would not

20

fully compensate Bankers Life for Defendants Young, Tulppo, Teesdale and Michalec's breach of their customer non-solicitation obligations.

## FIFTH CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets)
(Against All Defendants)

112.    Paragraphs 1 through 111 of this Verified Complaint are fully incorporated herein by reference.

113.    By virtue of being former Bankers Life managers and agents, Defendants have in their possession Bankers Life's confidential and trade secret information. Unauthorized disclosure and misappropriation of such information poses a significant threat to Bankers Life's ongoing business.

114.    Bankers Life's confidential and trade secret information constitutes trade secrets because Bankers Life derives independent economic value from that information, such information is neither generally known nor readily accessible by proper means by other persons who can obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. Thus, Bankers Life's confidential and trade secret information described herein constitutes "trade secrets" within the meaning of the Illinois Trade Secrets Act, 765 ILCS § 1065 *et seq.*

115.    Defendants have misappropriated Bankers Life's confidential and trade secret information to target policyholders and prospective policyholders, tailor proposals to specific insurance products and premium costs, and solicit these policyholders away from Bankers Life.

116.    These actions by Defendants are in violation of the Illinois Trade Secrets Act.

117.    Defendants will be unjustly enriched by the misappropriation of Bankers Life's confidential and trade secret information and, unless restrained, will continue to use, divulge, and/or otherwise misappropriate Bankers Life's confidential and trade secret information.

118.    Defendants' wrongful conduct will persist unless enjoined by this Court.

119.    Bankers Life has suffered actual damages as a result of Defendants' misappropriation of Bankers Life's confidential and trade secret information.

120.    As a result of the misappropriation of Bankers Life's confidential and trade secret information, Bankers Life has been injured and faces irreparable injury. Bankers Life is threatened with losing its competitive advantage, its confidential and trade secret information, and goodwill in amounts which may be extremely difficult, if not impossible, to fully determine.

121.    Defendants' conduct as alleged herein was willful and malicious and entitles Bankers Life to recover punitive damages and attorney's fees.

## SIXTH CLAIM FOR RELIEF
### (Conversion)
### (Against All Defendants)

122.    Paragraphs 1 through 121 of this Verified Complaint are fully incorporated herein by reference.

123.    Bankers Life has the absolute and unconditional right to its documents containing Bankers Life's confidential and trade secret information and the immediate possession of such property.

124.    Pursuant to their respective Agent Contracts, Defendants agreed to return all of Bankers Life's documents, including, without limitation, documents containing Bankers Life's confidential and trade secret information.

125.    Defendants have retained and wrongfully obtained Bankers Life's property for their own use and with the intent to permanently deprive Bankers Life of that property.

126.    Defendants, without the authorization of Bankers Life, wrongfully assumed control, dominion, and/or ownership over Bankers Life's property.

127.    Bankers Life has suffered actual damages as a result of Defendants' acts of

conversion.

128.    Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of Defendants' acts of conversion.

129.    Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for Defendants' acts of conversion.

130.    Defendants' conduct as alleged herein was willful and malicious and entitles Bankers Life to recover punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**(Tortious Interference With Prospective Advantage)**
(Against Defendants Young, Tulppo, Teesdale and Michalec)

131.    Paragraphs 1 through 130 of this Verified Complaint are fully incorporated herein by reference.

132.    Bankers Life has achieved a stable business relationship with its policyholders.

133.    Defendants Young, Tulppo, Teesdale and Michalec were and still are aware of the stable business relationships Bankers Life has with its policyholders in the following counties in Michigan: Alcona, Alpena, Antrim, Benzie, Charlevoix, Cheboygan, Chippewa, Clare, Crawford, Emmet, Gladwin, Grand Traverse, Iosco, Kalkaska, Lake, Leelanau, Mackinac, Manistee, Missaukee, Montmorency, Ogemaw, Osceola, Oscoda, Ostego, Presque Isle, Roscommon and Wexford, as delineated in Paragraph 27 above.

134.    Bankers Life has or had valid insurance contracts with its policyholders and expects/expected these contracts and business relationships to continue. Defendants Young, Tulppo, Teesdale and Michalec were aware of Bankers Life's expectation in this regard.

135.    With this knowledge, Defendants Young, Tulppo, Teesdale and Michalec have intentionally and wrongfully solicited Bankers Life policyholders for the purpose of having them curtail, resign, or sever their relationship with Bankers Life.

136.    Similarly, Defendants Young, Tulppo, Teesdale and Michalec's conduct was intentionally done to induce or attempt to induce policyholders to relinquish, surrender, replace, or lapse their respective policies with Bankers Life and replace it with an alternative policy sold by them.

137.    Bankers Life has had its policyholders cancel or lapse their policies and has otherwise lost business as a result of Defendants Young, Tulppo, Teesdale and Michalec's wrongful conduct.

138.    But for Defendants Young, Tulppo, Teesdale and Michalec's wrongful conduct, Bankers Life would have retained the business of such policyholders and clients.

139.    Defendants Young, Tulppo, Teesdale and Michalec's conduct as described above is in violation of their respective Agent Contracts.

140.    The conduct as described above was without justification.

141.    The conduct as described above has damaged Bankers Life in an amount to be proven at trial.

142.    Bankers Life has suffered and will continue to suffer irreparable harm as a direct result of Defendants Young, Tulppo, Teesdale and Michalec's acts of tortious interference.

143.    Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Bankers Life for Defendants Young, Tulppo, Teesdale and Michalec's acts of tortious interference.

144.    The conduct as alleged above is willful and malicious and entitles Bankers Life to recover punitive damages.

### EIGHTH CLAIM FOR RELIEF
**(Fraud)**
(Against Defendant Young)

145.    Paragraphs 1 through 144 of this Verified Complaint are fully incorporated herein

by reference.

146.     Defendant Young forged the signatures of several of his family members on policy applications and falsely represented to Bankers Life that these policies were actually requested by those individuals.

147.     In fact, Defendant Young took out these policies solely for the purpose of qualifying for a sales bonus from Bankers Life. Defendant Young cancelled these policies shortly after receiving this bonus.

148.     Bankers Life paid a sales bonus to Young in reliance upon his false representation that these were bona fide insurance policies and with the expectation that these policyholders would be long-term policyholders, as are most of Bankers Life's policyholders.

149.     As a result of this fraudulent and wrongful conduct, Young has received money that he was not entitled to receive and Bankers Life has suffered damages.

150.     Young should be required to disgorge and return to Bankers Life all monies and gain that Young wrongfully obtained from Bankers Life.

### NINTH CLAIM FOR RELIEF
**(Unjust Enrichment)**
(Against Defendant Young)

151.     Paragraphs 1 through 150 of this Verified Complaint are fully incorporated herein by reference.

152.     Defendant Young forged the signatures of several of his family members on policy applications. Young took out these policies solely for the purpose of qualifying for a sales bonus from Bankers Life, and then cancelled the policies shortly thereafter.

153.     As a result of this fraudulent and wrongful conduct, Young has received money that he was not entitled to receive. As such, Young has been unjustly enriched at the expense of Bankers Life.

25

154. Young should be required to disgorge and return to Bankers Life all monies and gain that Young wrongfully obtained from Bankers Life.

**WHEREFORE**, Bankers Life requests the following relief against Defendants:

(a)  Entry of a preliminary and permanent injunction providing specific performance of the terms of the Agent Contracts signed and acknowledged by Defendants;

(b)  Entry of a preliminary and permanent injunction prohibiting Defendants from misappropriating Bankers Life's confidential and trade secret information;

(c)  Entry of judgment in favor of Bankers Life and against Defendants for fraud and related activity in connection with computers, breach of contract, misappropriation of trade secrets, conversion, tortious interference with prospective economic advantage, fraud and unjust enrichment; and

(d)  Compensatory damages, double damages for willful misappropriation of trade secrets, punitive damages, costs, and attorneys' fees, and any other relief as deemed to be warranted by this Court.

Respectfully submitted,

*/s/ David K. Haase*
David K. Haase

David K. Haase (6201278)
Darren M. Mungerson (6256434)
William J. Shin (6295616)
Todd M. Church (6281176)
LITTLER MENDELSON
A Professional Corporation
321 N. Clark Street, Suite 1000
Chicago, IL  60654
Tel: 312.372.5520
Fax: 312.372.7880

*Attorneys for Plaintiff*

Dated: April 26, 2011

## VERIFICATION

I, Nathan Richardson, Regional Director with Bankers Life and Casualty Company, have read the foregoing Verified Complaint and that to the best of my knowledge and belief the allegations in the foregoing Complaint are true.

Signed under the pains and penalties of perjury this 25TH day of April, 2011.

By: _____

Sworn to and Subscribed before me this 2 5 day of April, 2011.

_____
Official Signature of Notary

JILL STONER
Notary Public, State of New Jersey
My Commission Expires July 11, 2012 , Notary Public
Notary's printed or typed name

## VERIFICATION

I, Rick Riser, with the Special Investigations Unit for CNO Services LLC, which performs services for all CNO companies, including Bankers Life and Casualty Company, have read the foregoing Verified Complaint and that to the best of my knowledge and belief the allegations in the foregoing Complaint are true.

Signed under the pains and penalties of perjury this 26 day of April, 2011.

By: _____

Sworn to and Subscribed before me this 26th day of April, 2011.

_____
Official Signature of Notary

> KATIE ROBINSON
> Notary Public, State of Indiana
> Tipton County
> My Commission Expires
> February 04, 2017

_____, Notary Public
Notary's printed or typed name

28